IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| TANESHIA ROBINSON, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 2:11cv020-MEF |
| | ) | |
| v. | ) | |
| | ) | |
| R & L FOODS (WENDY'S), | ) | |
| | ) | |
| Defendant. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Before the court are Defendant's Motion for Summary Judgment (Doc. #25), Plaintiff's Opposition (Doc. #26), and Defendant's Reply (Doc. #27). Also pending before the court is Defendant's Motion to Strike Plaintiff's Brief and Portions of Evidence Submitted in Response (Doc. #28). Plaintiff filed a second Response to Defendant's Motion for Summary Judgment (Doc. #29), to which Defendant filed a second Motion to Strike (Doc. #30). For the reasons that follow, the undersigned RECOMMENDS that the Motion for Summary Judgment (Doc. #25) be GRANTED and Defendant's Motions to Strike (Docs. #28 & 30) be DENIED.

**I.     STANDARD OF REVIEW**

Under Rule 56(a) of the Federal Rules of Civil Procedure, a reviewing court shall grant a motion for "summary judgment if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Fed. R. Civ. P. 56(a).[1] Only disputes about material facts will preclude the granting of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson*, 477 U.S. at 248).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion[,]" and alerting the court to portions of the record which support the motion. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). However, once the movant has satisfied this burden, the non-movant is then similarly required to cite to portions of the record which show the existence of a material factual dispute. *Id.* at 324. In doing so, and to avoid summary judgment, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to

---

[1] On December 1, 2010, amendments to Rule 56 became effective. The amendments to Rule 56 generally reorganize the provisions of the Rule and incorporate language which is "intended to improve the procedures for presenting and deciding summary judgment-motions and [is] . . . *not intended to change the summary-judgment standard or burdens.*" *Farmers Ins. Exchange v. RNK, Inc.*, __ F.3d __, 2011 WL 183969 at *9 n.4 (1st Cir. Jan. 21, 2011) (internal quotations omitted) (emphasis in original). Moreover, because the summary judgment standard remains the same, the amendments "will not affect continuing development of the decisional law construing and applying" the standard now articulated in Rule 56(a). Fed. R. Civ. P. 56(a) advisory committee's note to 2010 amendments. Accordingly, while the court is bound to apply the new version of Rule 56, the undersigned will, where appropriate, continue to cite to decisional law construing and applying prior versions of the Rule.

particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[], admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A) & (B).

If the non-movant "fails to properly address another party's assertion of fact" as required by Rule 56(c), then the court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(2) & (3).

In determining whether a genuine issue for trial exists, the court must view all the evidence in the light most favorable to the non-movant.  *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).  Likewise, the reviewing court must draw all justifiable inferences from the evidence in the non-moving party's favor.  *Anderson*, 477 U.S. at 255.  After the non-moving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).

**II.   STATEMENT OF FACTS**

The court has carefully considered the pleadings in this case and all documents

submitted in support of, and in opposition to, Defendant's Motion for Summary Judgment. The submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following relevant facts:[2]

Plaintiff, Taneshia Robinson, is African-American. Defendant, R & L Foods, operates thirty-nine Wendy's restaurants in the Southeast United States, including a Wendy's located in Clanton, Alabama.

Plaintiff began working for Defendant sometime in 2001 or 2002. Plaintiff was originally hired by Defendant to work as a crew member at its Clanton, Alabama location. Plaintiff was hired by then Store Manager, Donna Cottingham, and then Assistant Manager, Angela Wilson. Plaintiff was eventually promoted to the position of assistant manager. Plaintiff worked for approximately five years at the Clanton store. Plaintiff's employment ended due to her resignation.

In January 2008, Plaintiff was rehired by Defendant to work as a crew member at the Clanton, Alabama Wendy's. As part of her duties, Plaintiff operated the cash register and was responsible for keeping the register balanced. Plaintiff worked under the supervision of Assistant Manager Jessica Owen and General Manager Chris Lewis.

Jessica Owen has worked as an assistant manager at the Clanton store since January 18, 2010. Chris Lewis has served as the general manager of the Clanton store since February

---

[2] Plaintiff did not provide the court with a section of disputed or undisputed facts in either of her responses to Defendant's Motion for Summary Judgment. The court has established this facts section based on Defendant's sections of undisputed and disputed facts, evidentiary submissions from both parties, and by making determinations where necessary.

4

2010. From May 2007 until May 2011, Craig Thomas served as the district manager of the Clanton store. Gary Real has served as director of human resources since 1997.

General managers oversee store operations and supervise the store managers, assistant managers and crew members. General managers report to the district managers. District managers report to the director of operations. General managers have the authority to hire, discipline, and terminate crew members.

Defendant has in effect a harassment policy, which prohibits harassment based on race. Defendant also provides a 1-800 telephone number employees can call to report harassment.

On August 23, 2010, Plaintiff called Defendant's 1-800 employee telephone hotline and complained that Owen had called her a "bitch." On August 30, 2010, District Manager Craig Thomas completed a Corrective Action Notice, *see* Doc. 24-3 at 10-11, indicating that he gave Owen a verbal warning regarding Plaintiff's complaint to the employee hotline.

Plaintiff was discharged from her employment with Defendant, R & L Foods, on September 7, 2010. On that day, General Manager Chris Lewis and Assistant Manager Jessica Owen met with Plaintiff and explained that because food and labor costs had not improved, the most senior cashiers, including Plaintiff, would be terminated.

Plaintiff completed an intake questionnaire with the Equal Employment Opportunity Commission ("EEOC") on September 28, 2010 and then filed a complaint with the EEOC. Plaintiff's questionnaire listed two actions she felt were discriminatory: 1) that on August 23,

2010, Assistant Manager Jessica Owen called her a "bitch," and 2) that on September 7, 2010, General Manager Chris Lewis and District Manager Craig Thomas terminated her employment. On October 19, 2010, Plaintiff was informed via telephone that her EEOC complaint would be dismissed.

Plaintiff filed suit in this federal court on January 7, 2011, alleging race-based termination and a racially hostile work environment.

## III.   DISCUSSION

Defendant has moved for summary judgment as to all of Plaintiff's claims. The court will address Defendant's arguments below.

### A.   Plaintiff's Race-based discharge claim.

Plaintiff's first claim alleges that she was terminated because of her race.[3] Plaintiff has not provided direct evidence that discrimination was the reason for her termination. Nor has she proffered statistical evidence or evidence of a pattern of discrimination in this case. Because Plaintiff's race discrimination claim relies on circumstantial evidence, it is analyzed under the burden-shifting framework described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973).

Under the *McDonnell Douglas* framework, Plaintiff must first create a presumption

---

[3] Plaintiff does not indicate under what federal law or laws she brings suit. Upon review of Plaintiff's allegations, the court analyzes Plaintiff's claims as being brought pursuant to Title VII of the Civil Rights Act of 1964.

of discrimination by establishing a prima facie case. *McDonnell Douglas*, 411 U.S. at 802. Plaintiff may establish a prima facie case of discrimination through circumstantial evidence by proving that: (1) she belongs to a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated employees outside her classification more favorably; and (4) she was qualified to do the job. *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (citing *McDonnell Douglas*, 411 U.S. at 802; *Coutu v. Martin Cnty. Bd. of Cnty. Comm'rs*, 47 F.3d 1068, 1073 (11th Cir. 1995); *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1060 (11th Cir. 1994)). If Plaintiff establishes a prima facie case, the burden shifts to the employer to produce a legitimate, nondiscriminatory reason for her termination. *McDonnell Douglas*, 411 U.S. at 802. Defendant's burden is "exceedingly light" and the defendant must merely proffer a non-race based reason for Plaintiff's termination, not prove it. *Meeks v. Computer Assocs Int'l*, 15 F.3d 1013, 1019 (11th Cir. 1994) (quoting *Perryman v. Johnson Prods. Co., Inc.*, 698 F.2d 1138, 1142 (11th Cir. 1983)).

Plaintiff's Complaint states "[m]y civil rights was [sic] violated when I was fired on September 9, 2010 from R&L Foods (Wendy's). At the time I was fired I am [sic] a black female and head of the household. R&L Foods (Wendy's) deprived me of my right to work because of a hostile work place." Pl.'s Compl. (Doc. #1) at 1. Defendant argues that: 1) Plaintiff cannot make out a prima facie case because at the same time that Plaintiff was terminated a similarly-situated white employee (crew member Alethia Murr) was also terminated for the same reason, Def.'s Brief (Doc. #25) at 14; and 2) that even assuming

7

Plaintiff can make out a prima facie case, Defendant has provided a legitimate, nondiscriminatory reason for Plaintiff's termination, which Plaintiff has failed to rebut, Def.'s Reply (Doc. #27) at 3. For the reasons discussed below, the court agrees with Defendant.

Plaintiff's race-based disparate treatment claim fails because she cannot meet the third element for a prima facie case. Plaintiff has failed to identify a "similarly situated" employee outside of her race–i.e., she has not identified a proper comparator–who was treated more favorably by Defendant. In fact, Defendant has presented evidence that a similarly-situated white employee, Murr–another crew member responsible for operating the cash register–was terminated at the same time as Plaintiff and for the same reason. Thus, without identifying a valid comparator, Plaintiff cannot satisfy the third element of her prima facie case.

Even assuming *arguendo* that Plaintiff has established a prima facie case of race-based termination, Defendant is nonetheless entitled to summary judgment because it has provided a legitimate, nondiscriminatory reason for Plaintiff's termination and Plaintiff failed to rebut Defendant's proffered reason for its employment decision. Defendant has indicated that Plaintiff was terminated because food and labor costs were outside an acceptable range. Def.'s Brief (Doc. #25) at 6-10; 13-14. Specifically, Defendant indicates that around February 2010, District Manager Craig Thomas noticed that store costs–costs associated with food, wasted paper products, employee theft of food or money, and impermissible employee discounts–exceeded an acceptable range. *Id.* at 6. District Manager Thomas and General

8

Manager Lewis believed the problem was based on the conduct of crew members responsible for operating the cash register as they concluded these employees were most likely to affect food and labor costs. *Id.* at 7. As a result, on August 24, 2010, all crew members who operated the cash register received a verbal warning from General Manager Lewis regarding unacceptable store costs. Chris Lewis Aff. (Doc. #24-2) at 5. Later, on August 30, 2010, all crew members received a written warning regarding the same issue. *Id.* General Manager Lewis, with District Manager Thomas's concurrence, decided to terminate the three most senior operators of the cash register–Plaintiff (black), Carla Hilliard (black), and Alethia Murr (white)–"because (1) store costs still remained outside the acceptable range on September 5, 2010, and (2) these were the three most tenured crew members who operated the cash register." Def.'s Brief (Doc. #25) at 9 (citations omitted). Defendant's proffered reason demonstrates that race did not play a role as both black and white employees were adversely affected by the employment decision. Thus, Defendant has presented a legitimate, nondiscriminatory reason for Plaintiff's termination.

To avoid summary judgment, Plaintiff "must introduce *significantly probative evidence showing* that the asserted reason is merely *a pretext for discrimination*." *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1228 (11th Cir. 1993) (citation omitted) (emphasis added). In order to show pretext, Plaintiff must "demonstrate that the proffered reason was not the true reason for the employment decision. . . . [Plaintiff] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the

9

employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). "If the plaintiff does not satisfy her burden of establishing a genuine issue of material fact that the employer's reason was pretextual, the grant of summary judgment in favor of the employer is proper." *Cuddeback v. Fla. Bd. of Educ.*, 381 F.3d 1230, 1235 (11th Cir. 2004) (citing *Combs v. Plantation Patterns*, 106 F.3d 1519, 1529 (11th Cir.1997)). The Eleventh Circuit has held that "[t]here is a genuine issue of material fact if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (citing *Patterson & Wilder Constr. Co. v. United States*, 226 F.3d 1269, 1273 (11th Cir. 2000).

Plaintiff fails to satisfy this burden. Plaintiff's response to Defendant's Motion for Summary Judgment fails to provide any evidence to oppose the motion, simply stating "[t]here are genuine facts that I was discriminated against. . . . EEOC clearly saw a problem in my case and allowed me to bring this case to court. . . . I feel that this motion for judgement should be denied and a trial held." Pl.'s Resp. (Doc. #26) at 1-2.[4]

Plaintiff's conclusory allegations that she was discriminated against and her unsubstantiated assertion that "there are genuine facts" in this case, demonstrate nothing more than her subjective beliefs. Thus, Plaintiff's pleadings and responses are insufficient

---

[4] To the extent that Plaintiff has submitted any evidence, it is only relevant to her hostile work environment claim. Plaintiff attached sworn statements from co-workers Carla Hilliard and Jakeria Mitchell. Pl.'s Resp. (Doc. #26) at 3-4. The affidavits indicate that each affiant has at one time or another heard Assistant Manager Jessica Owen call Plaintiff a "bitch." *See infra* Part B.

to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *See Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions . . . , in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment"); *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987) ("[U]nsubstantiated assertions alone are not enough to withstand a motion for summary judgment."); *Cordoba v. Dillard's Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("Speculation does not create a genuine issue of fact[.]"). *See also Beard v. Banks*, 548 U.S. 521, 525 (2006) ("Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact."); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).

Plaintiff has simply failed to rebut Defendant's legitimate, nondiscriminatory reason for its employment decision and, thus, her claim for race-based termination must fail.

### B.     Plaintiff's Hostile Work Environment claim.

Plaintiff also asserts a hostile work environment claim alleging race-based harassment. Plaintiff bears the burden of proof in a hostile work environment claim. A hostile work environment claim is established upon proof that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter

11

the conditions of the victim's employment and create an abusive working environment." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002) (internal citation and quotation marks omitted); *see also Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 20 (1993).

To establish a prima facie case for a hostile work environment claim, Plaintiff must show that: (1) she belongs to a protected group; (2) she has been subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic, such as her race; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatory abusive working environment; and (5) the employer is responsible for such environment under either a theory of vicarious or of direct liability. *Miller*, 277 F.3d at 1275. Taking the evidence in the light most favorable to Plaintiff, the court finds that Plaintiff cannot make out a prima facie case.

### 1. Whether the alleged harassment was based on Plaintiff's race.

Plaintiff's race-based hostile work environment claim is based on her allegation that Assistant Manager Owen called her a "bitch." Pl.'s Resp. (Doc. #26) at 1, 3-4; Pl.'s Depo., Def.'s Ex. E at 71-74 (Doc. #24-5 at 19-20). This allegation cannot support a claim for a hostile work environment because Plaintiff has not shown that there was a racial element to Owen's use of this remark.[5] "Harassment not based upon a protected characteristic is generally not actionable." *Martinez v. Pavex Corp.*, 2006 WL 1823430, at *5 (M.D. Fla. June 30, 2006) (citing *McCollum v. Bloger*, 794 F.2d 602, 610 (11th Cir.1986)); *see also*

---

[5] Plaintiff alleges only that the use of the term "bitch" supports a claim for race-based harassment. Plaintiff does not set forth a claim for gender-based harassment in this case.

*Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999) (a plaintiff must establish he was subjected to the harassment because of his protected class; an environment equally harassing for all races does not constitute a hostile work environment).

To survive a summary judgment motion, Plaintiff needs to show that she was harassed because of her race. Plaintiff fails to meet this element of her prima facie case. Being called a "bitch" does not demonstrate racial animus. Other district courts have found that a term like "bitch," without a modifier, is race-neutral and thus is not probative of a racial bias. *See e.g., Mason v. Mitchell's Contracting Serv., LLC*, 2011 WL 4026652, at *12 (S.D. Ala. Sept. 12, 2011) (noting that Plaintiff being told, "'you can't drive this truck, motherfucker,' without more, does not display any racial animus"); *Hercules v. Dep't of Homeland Sec.*, 2008 WL 1925193, at *21 (N.D. Cal. Apr. 29, 2008) (finding that occasionally calling plaintiff a "bitch," was not evidence of a hostile work environment, racial or otherwise); *Allen v. Bake-Line Prods., Inc.*, 2001 WL 1249054, at *10 (N.D. Ill. Oct. 17, 2001) (finding that "being called 'stupid,' 'lazy,' a 'motherfucker,' a 'bitch' and the like are not probative of whether a racially hostile work environment existed because these type of statements are not racially motivated" (citing *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 345-46 (7th Cir. 1999) (finding that statements like "what the hell is going on?"; "what the hell are you doing?"; "get your head out of your ass"; "dumb motherfucker"; and "when the fuck are you going to get the product[?]" did not "implicate negative attitudes toward African-Americans" and that "[i]t cannot be said with any degree of certainty that the character of these remarks

was discriminatory")))). Similarly, in this case, Plaintiff has simply alleged that she was called a "bitch," but does not allege anything more.

In addition to the fact that Plaintiff has failed to present evidence that the term "bitch," contained any racial animus, Defendant has presented sworn statements from Jessica Owen and Tina Adams in an attempt to demonstrate that Owen's use of the term did not contain racial hostility. Owen's affidavit states "I used the word 'bitch' to [sic] Robinson on August 23, 2010, and on one other occasion in June 2010 that I recall. I also used the term 'bitch' in the same way with white females Tina Adams and Sherry Vance. I meant nothing racial by it." Def.'s Ex. D (Doc. #24-4) at 3. The sworn declaration of employee Tina Adams asserts that she too has been called a "bitch" by Owen. Def.'s Ex. F (Doc. #24-6). While Plaintiff's response challenges Defendant's evidence, asserting, "[t]he Defendants [sic] witness Tina Adams who is white and still employed at Wendy's is suddenly saying that Assistant Manager Jessica Owen[] has called her a bitch. It's seem [sic] to me that this has been said to make my complaint seem none [sic] racial," Pl.'s Resp. (Doc. #26) at 1-2, this is not enough. Plaintiff cannot simply respond with conclusory statements and her own assertions or beliefs; she must provide evidence demonstrating that she was subjected to the alleged harassment *because* of her race. Plaintiff has failed to do so.

Because Plaintiff produces nothing which suggests there was racial animus behind the allegations she makes, summary judgment in favor of Defendant on Plaintiff's hostile work environment claim is appropriate.

**2.     Whether the harassment was sufficiently severe or pervasive.**

Plaintiff's hostile work environment claim is predicated on two[6] isolated incidents of allegedly being called a "bitch" by her supervisor, Jessica Owen. The court has already found that Plaintiff failed to point to evidence demonstrating that the term "bitch" contained any racial animus. However, even assuming that Owen's isolated statements were based upon a protected characteristic, in order to survive a summary judgment motion, Plaintiff must also be able to point to specific evidence showing that the alleged conduct was "sufficiently severe or pervasive to alter the terms and conditions of [her] employment and create a discriminatory abusive working environment." *See Miller*, 277 F.3d at 1275-76.

The requirement that the harassment be "severe or pervasive" under factor four contains an objective and subjective component. *Miller,* 277 F.3d at 1276. Indeed, "[i]t is the fourth element—sufficiently severe or pervasive harassment—that 'tests the mettle of most . . . harassment claims.'" *Alexander v. Opelika City Bd. of Educ.*, 2008 WL 401353, at *3 (M.D. Ala. Feb. 12, 2008) (quoting *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 583 (11th Cir. 2000)). In evaluating the severity of the alleged harassment, there are four factors to be considered: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Miller*,

---

[6] Plaintiff's Complaint (Doc. #1) lists June 16, 2010 and August 23, 2010 as dates in which her civil rights were violated. Additionally, in her deposition, Jessica Owen admitted that she called Plaintiff a "bitch" on August 23, 2010 and on another occasion in June 2010. Def.'s Brief (Doc. #25) at 1-2; Pl.'s Depo., Def.'s Ex. E at 71-74 (Doc. #24-5 at 19-20).

277 F .3d at 1276; *see also Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999).

Plaintiff's evidence fails to meet even one of these factors. In support of her allegations, Plaintiff presents her own unsubstantiated assertions and two sworn affidavits, which add little, if any, support to her case. Plaintiff's first Response states, "I worked in a hostile work environment do [sic] to the fact of the Assistant Manager Jessica Owen[] and the District Manager Craig Thomas love affair caused complaints that I made to be neglected and not handled properly." Pl.'s Resp. (Doc. #26) at 1. Plaintiff's second Response reiterates these same allegations, stating, "I was discriminated against by Jessica Owen[]. The harassment became unbearable when it was discovered that it [sic] was a love affair on the job. The parties must have felt that I would tell their husband or wife. My being black she felt she could talk to me any kind of way." Pl.'s Second Resp. (Doc. #29) at 1. The two sworn affidavits submitted by Plaintiff indicate that the two affiants have heard and/or witnessed Jessica Owen calling Plaintiff a "bitch" "on several occasions." Pl.'s Resp. (Doc. #26) at 3-4. Both affiants further indicate that neither has ever heard or witnessed Jessica Owen use the same remark to refer to a white employee. *Id.* These affidavits add nothing new to bolster Plaintiff's claims. Plaintiff's evidence is insufficient to demonstrate there was a racial animus behind the remark at issue and, even if it did establish a racial animus, it certainly is not enough to demonstrate that the alleged harassment was sufficiently severe and pervasive to establish a hostile work environment claim.

A survey of relevant caselaw reveals that Plaintiff's allegations do not satisfy the strict

16

standard set by the Eleventh Circuit. The Eleventh Circuit has found no hostile work environment even in cases involving more serious allegations than those in this case and including the use of racial slurs. *See e.g., Alexander v. Opelika City Schools*, 352 F. App'x 390 (11th Cir. 2009) (finding that recalling eight instances over the course of two years where plaintiff was called "boy" was not enough. The Eleventh Circuit affirmed summary judgment in favor of defendants finding that "none of the alleged racial comments contained threats of physical violence, and [plaintiff] did not demonstrate that the comments interfered with his job performance."); *Washington v. Kroger Co.*, 218 F. App'x 822, 825 (11th Cir. 2007) (finding no racially hostile work environment when a co-worker allegedly hung a figurine representing the plaintiff by a rope and called the plaintiff racially-suggestive names, including "boy"); *Barrow v. Georgia Pacific Corp.*, 144 F. App'x 54, 57–58 (11th Cir. 2005) (finding no hostile work environment even with evidence of "displays of the rebel flag on tool boxes and hard hats, the letters 'KKK' on a bathroom wall and on a block-saw console, and a noose in another employee's locker[,]" as well as two or three threats to "kick [plaintiff's] 'black ass[,]'" and one supervisor called plaintiff a "nigger" and threatened to "cut" him if he looked at a white girl, and another supervisor called him "black boy." Allegations reflected conduct that was "isolated," "sporadic," and "random" and "d[id] not meet the standard of severe and pervasive harassment."); *Quarles v. Con–Way Freight, Inc.*, 2008 WL 1994916, at *7 (M.D. Fla. May 8, 2008) (relying on *Barrow*, found that "six instances of racially-related conduct over a period of a few years," and "approximately four

other instances that were reported to [plaintiff]"—which included a supervisor's use of racially offensive terms, using a stuffed animal gorilla to portray a black employee, and being told of a noose that had been shown to another black employee—fell "well short of the required level of severity and frequency to support a hostile environment claim"); *Smith v. Beverly Health & Rehab. Serv., Inc.*, 978 F. Supp. 1116, 1122 (N.D. Ga. June 24, 1997) (a supervisor's comments that "all that mooly can do is make coffee and bring it to me," "these goddamn Georgia niggers think they own Georgia," and "where I come from niggers knew their place," did not rise to the level of severe and pervasive racial harassment).

In this case, Plaintiff's allegations that her supervisor called her a "bitch" on a few occasions[7] over the eight to nine-year period of employment in question are too isolated and sporadic. Additionally, Plaintiff has not alleged the events she describes adversely affected her work performance, occurred frequently, or were physically threatening or humiliating. Although the court considers even a single use of such a remark to be deplorable, for purposes of evaluating a hostile work environment claim, the court finds Plaintiff's allegations, over the course of Plaintiff's eight to nine-year period of employment with Defendant, insufficient for Plaintiff to meet the Eleventh Circuit's stringent standard and maintain a hostile work environment claim. Thus, Plaintiff's hostile work environment claim

---

[7] During her deposition, Plaintiff was asked about other instances, other than the August 23, 2010 incident, in which Jessica Owen had called her a "bitch." Plaintiff indicated that "she called me that often . . . It's been several times." Pl.'s Depo., Def.'s Ex. E at 72-74 (Doc. #24-5 at 19-20). When asked to give a number, Plaintiff stated "[a]bout, I know like 14 or 15 times." *Id.* at 74. However, Plaintiff was unable to recall specific instances other than the June 2010 incident and one other time when Owen called her a "bitch" while they were working together. *Id.* at 74 & 78.

18

must also fail.

### C. Defendant's Motions to Strike

Defendant has also moved to strike Plaintiff's second Response to the motion for summary judgment and the affidavits provided by Plaintiff in support of her opposition to summary judgment. The court did consider both of Plaintiff's responses and the affidavits, as reflected in this recommendation, and therefore Defendant's motions are due to be denied.

## VI. CONCLUSION

For the reasons stated above, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendant's Motion for Summary Judgment (Doc. #25) be GRANTED;

2. Defendant's Motion to Strike Plaintiff's Brief and Portions of Evidence Submitted in Response to Defendant's Motion for Summary Judgment (Doc. #28) be DENIED;

3. Defendant's Motion to Strike Plaintiff's Second Response to Defendant's Motion for Summary Judgment (Doc. #30) be DENIED; and

4. This case be dismissed.

It is further

ORDERED that on or before **December 5, 2011**, the parties may file objections to the Recommendation. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or

general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a *de novo* determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 21st day of November, 2011.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE